UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALLIED MACHINE & ENGINEERING CORPORATION, | )<br>)  Civil Action No. 1:10-CV-0773<br>) |
| Plaintiff, | )  JUDGE CHRISTOPHER A. BOYKO |
| v. | )<br>) |
| COMPETITIVE CARBIDE, INC., | )<br>) |
| Defendant. | ) |

### ALLIED MACHINE & ENGINEERING CORP.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S JULY 5, 2011 SUMMARY JUDGMENT ORDER

Defendant Competitive Carbide, Inc. ("CC") appears to make primarily two arguments (with lots of tangents and sub-parts) in opposition to Allied's motion for reconsideration: (1) Allied made multiple misrepresentations to CC, the Court, and the Patent Office, which made Allied's motion to amend its complaint irrelevant and (2) Allied made more misrepresentations related to its infringement contentions, making the rest of its arguments irrelevant. This, of course, is an over simplification of what is otherwise a disjointed and extremely difficult to follow opposition brief.

However disjointed and confusing they may be, all of Defendant's arguments are false, misleading, and/or unsupported. More telling, if not more troubling, is that Defendant's arguments are not responsive to Allied's motion for reconsideration. Defendant simply makes up arguments, attributes them to Allied, then provides unsupported or false arguments in response. Because Defendant does not respond directly to Allied's motion, Allied will rely on its moving papers for the substance of its arguments. Despite Defendant's opposition being almost

1

entirely irrelevant, due to the numerous false accusations directed at Allied, for the sake of Allied's and its counsel's reputations, and to point out the completely lack of credibility of Defendant and its counsel, Allied responds accordingly below.

I. **Allied's Pending Motion For Leave To Amend Its Complaint Withdrew The Allegation Of Infringement By The G-Port Consistent With The Parties Earlier And Stipulated Agreement**

Allied's motion argues that because the Court's summary judgment order is premised entirely on Allied's failure to amend its complaint, which its then pending motion for leave to amend corrected, that the Court should have granted its motion prior to ruling on Defendant's motion for summary judgment, and to not do so was an abuse of discretion. (Allied's Memorandum in Support, ECF #28, at 5-6).

In response, Defendant begins by arguing that it would be harmed if the Court had allowed Allied to amend its complaint. In support of this contention Defendant first states that Allied had twenty-six months to seek amendment after the filing of the '616 patent and five months after receiving the Notice of Allowance from the Patent Office but did not amend sooner. (Defendant's Opposition at 4).

Defendant's argument ignores the fact that Allied's proposed amended complaint revised paragraphs 8 and 9 so that only the Helmet Head was accused of infringement, consistent with what the parties had understood since at least as early as May 21, 2010, about a month after the complaint was filed. (Allied's Memorandum in Support, ECF #28, at 1, 5). This is what is important to Allied's argument, not that the '616 patent was being added.

Nevertheless, addressing Defendant's argument (ECF #30 at 4), a patent cannot be enforced until it issues. As the '616 patent did not issue until May 17, 2011, it would have been improper and legally impossible for Allied to have sought leave to amend its complaint before

this date. Allied sought timely leave to amend its complaint on June 27, 2011, approximately a month after the '616 patent issued.

Defendant also argues that it would be harmed by the Court granting Allied leave to amend its complaint because it defended itself at substantial cost and "due to Allied's public announcement of the proceedings early on." (ECF #30 at 5). Defending itself is not a reason to deny a party leave to amend its pleadings, otherwise Courts would never allow pleadings to be amended. Allied's motion for leave to amend was filed within about a month of the '616 patent issuing and, for reasons already explained in its moving papers, it did not think it needed to amend to remove the G-Port from contention. (*See* Allied's Memorandum in Support, ECF #28, at 2-4).

In its typical and disjointed fashion, Defendant next argues that Allied offers no excuse for its allegedly dilatory timing in seeking leave to amend since it "had over twenty-six months from the filing of the complaint to amend it pleadings…" (ECF #30 at 5). As set forth above, Allied could not amend its complaint to assert the '616 patent until it issued on May 17, 2011 and did not think it was otherwise necessary beforehand.

Defendant next accuses Allied of its "first material misrepresentation" to the Court, something that is simply not true. (ECF #30 at 5). Defendant argues that Allied misrepresented the fact that "[t]he '616 patent was publicly available in the PTO and thus Competitive was "aware" that the '616 patent was filed." Id. Contrary to its assertions, the patent application that lead to the '616 patent was publicly available even before this litigation was filed.

The patent application that eventually issued as the '616 patent was first published as U.S. Patent Application Publication No. 2010/0067994 ("the '994 Publication") on March 18, 2010. (Exhibit 1, '994 Publication, cover page). The '994 Publication lists right on its cover that

it is a continuation of the '050 patent in suit.  Even the most basic search of the Patent Office website database would have uncovered the '994 Publication almost a month before this litigation was filed.  In fact, as of the date of publication, the entire prosecution history of the application became available to the public through the Patent Office's website.  (See Exhibit 2, Printout of '616 Patent's prosecution history from PTO website).  There was no "first material misrepresentation" by Allied as claimed by Defendant.

Defendant continues by accusing Allied of its "second material misrepresentation" to the Court, something that again is not true.  (ECF #30 at 5).  Defendant argues that Allied is asserting that "had the Court permitted inclusion of the '616 Patent in the case, the on-sale bar date argument would have been cured, as the Patent Office allowed and issued the '616 Patent and application of "disclosed information" regarding Competitive's products and sales."  (*Id.* at 5-6).  Allied made no such argument.  This is another "material misrepresentation" by Defendant.

Defendant continues by falsely alleging that Allied has argued that because "the Patent Office decided that the '616 patent was valid and therefore the "on-sale bar" decision of this Court is de facto "trumped" by the Patent Office grant of the '616 [patent]…"  (ECF #30 at 6).  Again, Allied has never made such an argument.  Defendant's counsel simply makes up the facts as he goes.

Defendant then rounds out its false accusations by arguing that Allied never disclosed the G-Port prior art to the Patent Office during prosecution of the '616 Patent.  (ECF #30 at 6) (…DID NOT disclose a single item of Competitive's disclosures in this case regarding the on-sale to the Patent Office.").  Again, this is simply untrue and Defendant, who presumably

4

reviewed the '616 Patent prosecution that it included as an exhibit to its opposition, is well aware of this.

First, Allied did disclose the G-Port to the Patent Office. On August 12, 2010, Allied submitted an Information Disclosure Statement along with a copy of the Competitive Carbide, Inc., Brochure for Cutting Tools, dated September 2002. (Exhibit 3, Information Disclosure Statement at 4; Exhibit 4, Brochure submitted). Allied also informed the Examiner that it believed "that at least some tools within this brochure were offered for sale or sold prior to August 16, 2002," which is the earliest priority date for the '616 and '050 patents. (Exhibit 3). Allied did this so the catalog, dated a few months after the '616 patent's filing date, would be considered as prior art by the Patent Office. Allied clearly disclosed the G-Port prior art to the Patent Office in compliance with its duty of candor.

Defendant goes further and argues that "[w]hat is glaringly missing are the several dozen documents that demonstrate that Competitive tools, which were the allegedly infringing tools, were sold as early as January 23, 2001…" (ECF #30 at 6). Defendant then directs the Court's attention to Exhibit D to its opposition, which includes an Allied catalog (irrelevant), several Competitive Carbide catalogs (already disclosed to the Patent Office), and Competitive Carbide technical drawings and invoices, which were all marked "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER." Allied could not have disclosed these documents to the Patent Office because Defendant had designated them under the protective order.

More importantly, the technical drawings and invoices would not have made a difference to the Patent Office as it already had the Competitive Carbide catalog, which clearly disclosed the G-Port, and Allied's representation that it was prior art. The technical drawings and invoices

are merely cumulative in that they show the G-Port and that it was prior art, just as disclosed in the Competitive Carbide catalog and Allied's Information Disclosure Statement.

It is also critical to note that only the G-Port is prior art to the Allied patents, not the Helmet Head. Defendant repeatedly refers to the two as if they are both prior art, when only the G-Port is prior art. (ECF #30 at 1) ("The Court also found that the Defendant actually made and sold the allegedly infringing tools *several years* in advance of the application of the Plaintiff's patent.") (emphasis in original); (ECF #30 at 6) ("What is glaringly missing are the several dozen documents that demonstrate that Competitive tools, which were the allegedly infringing tools, were sold as early as January 23, 2001…"). None of the "several dozen documents" touted by Defendant relate to the Helmet Head.

Finally, Defendant summarizes its argument by accusing Allied of "fraud, concealment and inequitable conduct in the Patent Office." (ECF #30 at 8). As set forth above, Defendant's accusations are false, misleading, unsupported, and frivolous, and should be disregarded by the Court.

## II. Allied Withdrew Its Contention That The G-Port Infringed The '050 Patent As Stipulated To By Competitive Carbide

Allied's motion argues that the Court's invalidity ruling was improperly based on finding that Allied had not amended its complaint to withdraw the allegation of infringement against the G-Port when, in fact, pursuant to the Local Patent Rules and Defendant's stipulation, the accusation had been withdrawn within a month of filing the complaint. (Allied's Memorandum in Support, ECF #28, at 2-4).

Again, Defendant's counsel ignores Allied's moving papers, making up the facts as he goes. First, Defendant states that "First and foremost, the proposed Amended Complaint solely and exclusively demands judgment on the alleged infringement of the newly minted '616

patent." (ECF #30 at 8). To the contrary, Allied's proposed Amended Complaint alleges that "at least the Helmet Head drill tools" infringe specified claims of both the '050 and '616 patents. (ECF #26 at ¶ 9). Furthermore, there is no mention of the G-Port in the Amended Complaint. The fact that Allied said that "Defendant's drill tools that infringe upon the '616 Patent include, without limitation, the line of drill tools made and sold using the name Helmet Head" does not mean that it is accusing the G-Port of infringement. (ECF #26 at ¶ 8). It simply means that the allegation could include other tools sold under a different name that Allied learns about in discovery.

Although it should be obvious, the quotation attributed to Allied in the last full paragraph on page 9 was made up by Defendant's counsel. Again, contrary to Defendant's argument, Allied did not rework its infringement contentions several times to remove the G-Port product. Allied's initial infringement contentions never included the G-Port. (See Exhibit 1 to Allied's Motion for Reconsideration, ECF #28-2). Noticeably absent from Defendant's opposition is any mention of the parties joint Rule 26(f) planning report, which described the allegedly infringing activity as relating to the Helmet Head only. (See Allied's Memorandum in Support, ECF #28, at 2-3). Defendant's counsel was well aware of the fact that Allied had withdrawn any accusations of infringement against the G-Port as early as May 28, 2010, barely a month into the litigation. He, in fact, stipulated to it by signing the joint Rule 26(f) planning report without raising any issues or objections. Defendant's counsel's arguments now are again false, misleading, and improper, and should be given no consideration by the Court.

### III. The Court's Determination That Genuine Issues Of Material Fact Preclude Anticipation By The G-Port Preclude Invalidity Based On The On-Sale Bar

Allied argued that the Court erred in finding that the on-sale bar invalidated the '050 patent because it had already determined that there was a genuine issue of material fact as to

7

whether the G-Port anticipated the claims in suit. (Allied's Memorandum in Support, ECF #28, at 6-7). Defendant's opposition is completely silent and does not even tangentially respond to Allied's argument. The failure to even acknowledge Allied's argument speaks for itself.

## IV. CONCLUSION

For the foregoing reasons and those set forth in its moving papers, the Court should grant Allied's motion for leave, enter its amended complaint, and amend its earlier Order by denying Defendant Competitive Carbide's motion for summary judgment of invalidity in its entirety.

Defendant's opposition fails to respond to Allied's arguments, and is otherwise false, misleading, unsupported, and otherwise frivolous. It is one thing to argue zealously in support of one's client but Defendant's opposition crosses the line at every turn, and should, at the very least, be disregarded as lacking any credibility.

Respectfully submitted,

 /s/ R. Eric Gaum
Scott M. Oldham, Ohio Bar No. 0055323
smoldham@hahnlaw.com
William S. Nabors, Ohio Bar No. 0080853
bnabors@hahnlaw.com
HAHN LOESER & PARKS LLP
One GOJO Plaza, Suite 300
Akron, Ohio 44311-1076
Tele: (330) 864-5550
Fax: (330) 864-7986

R. Eric Gaum, Ohio Bar No. 0066573
regaum@hahnlaw.com
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Tele: (216) 621-0150
Fax: (216) 241-2824

Attorneys for Plaintiff Allied Machine &
Engineering Corporation

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2011 a copy of ALLIED MACHINE & ENGINEERING CORP.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S JULY 5, 2011 SUMMARY JUDGMENT ORDER was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ R. Eric Gaum
*One of the Attorneys for Plaintiff*
*Allied Machine & Engineering Corporation*